**NEWTON v. EMPLOYERS LIABILITY ASSUR. CORPORATION, Limited.**

No. 4519.

Circuit Court of Appeals, Fourth Circuit.

Nov. 6, 1939.

Charles B. Godwin, Jr., of Suffolk, Va. (W. Shepherd Drewry, of Norfolk, Va., on the brief), for appellant.

R. M. Hughes, Jr., of Norfolk, Va. (Leon T. Seawell, of Norfolk, Va., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and LUMPKIN, District Judge.

PARKER, Circuit Judge.

This is an appeal from a judgment for defendant in an action brought under an automobile garage public liability policy of insurance. The facts are undisputed and the case was heard by the judge without a jury. Two questions are presented by the appeal: (1) Whether under Section 4326a of the Code of Virginia a policy of automobile accident public liability insurance should be construed as covering the liability of a person operating a car with the consent of the insured owner, but under such circumstances as not to impose liability on the owner, and (2) if so, whether a garage liability policy falls within the rule.

Appellant was injured in Norfolk, Va. by an automobile driven by one Green, a salesman employed by Hudgins-Luring, Incorporated, the owner of the automobile. Green was driving the automobile with the permission of his employer but was not at the time engaged in the employer's business. A suit by appellant against Green and the employer resulted in a judgment for $5,000 against Green but absolving the employer from liability. Green was insolvent and execution against him was returned unsatisfied. Appellant thereupon instituted this suit to recover under the policy issued to the employer, on the theory that Green's liability was covered thereunder.

The policy, as stated, is an automobile garage public liability policy. Hudgins-Luring, Incorporated, of Norfolk, Va. is named therein as assured and the operations of that company are described as "automobile dealer or repair shop". Premium was based on the remuneration earned during the policy period by employees engaged in the declared operations. Limits of liability were fixed at $10,000 for each person and $20,000 for each accident. The pertinent provisions of the policy are as follows:

"1. Coverage A—Bodily injury liability. To pay on behalf of the Assured all sums which the Assured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of such of the operations hereinafter defined as are indicated by specific premium charge or charges in Item 4 of the declarations.

"2. Division 1.—Automobile Dealer or Repair Shop. The ownership, maintenance, occupation or use of the premises herein designated, including the public ways immediately adjoining, for the purpose of an automobile dealer or repair shop, and all operations either on the premises or elsewhere which are necessary and incidental thereto, including repairs of automobiles or their parts, and ordinary repairs of buildings on the premises and the mechanical equipment thereof; and the ownership, maintenance or use of any automobile for any purpose in connection with the above defined operations, and also for pleasure use.

"3. Definition of 'Assured.' The unqualified word 'Assured' includes not only the named Assured but also any partner thereof if the named Assured is a partnership, and the president, vice president, secretary and treasurer of the corporation if the named Assured is a corporation, with respect to the operation, for business or pleasure, of any automobile owned by or in charge of the named Assured, except an automobile owned by such partner or officer or by a member of his family; but this provision shall apply only with respect to any such partner or officer who earns remuneration which is included in the total remuneration upon which premium for this policy is based, as hereinafter provided.

"4. Financial Responsibility Laws. Any insurance provided by this policy for bodily injury liability or property damage liability with respect to any automobile owned by the named Assured shall conform to the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising from the use of such automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The Assured agrees to reimburse the Corporation for any payment made by the Corporation on account of any accident, claim or suit, involving a breach of the terms of this policy and for any payment the Corporation would not have been obligated to make under the provisions of this policy except for the agreement contained in this paragraph."

There was testimony that policies of this character are approved by the Bureau of Insurance of the State of Virginia, that they are not required by the Bureau to contain an omnibus coverage clause, and that, if it is desired to cover liability of any persons other than the named assured, this is accomplished by an endorsement on the policy to that effect for which an additional premium is charged.

The contention of appellant that the liability of one driving a car of the assured with his consent is covered by the policy is based upon the Virginia statute of 1934, which appears as Sec. 4326a of the Code, and is as follows:

"4326a. Third person injured by a party carrying indemnity insurance subrogated to rights of such party.—No policy of insurance against loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable, or, against loss or damage to property caused by animals or by any vehicle drawn, propelled or operated by any motive power, and for which loss or damage the person insured is liable, shall be issued or delivered to any person in this State by any corporation or other insurer authorized to do business in this State, unless there shall be contained within such policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injuries sustained or loss occasioned during the life of

such policy, and stating that in case execution against the insured is returned unsatisfied in an action brought by the injured person, or his or her personal representative in case death results from the accident, because of such insolvency or bankruptcy, then an action may be maintained by the injured person, or his or her personal representative, against such corporation under the terms of the policy for the amount of the judgment in the said action not exceeding the amount of the policy.

"*No such policy shall be issued or delivered in this State, to the owner of a motor vehicle, by any corporation or other insurer authorized to do business in this State, unless there shall be contained within such policy a provision insuring such owner against liability for damages for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner.*" (Italics supplied.)

▌▌ There can be no question but that the provisions of the statute above quoted are made a part of the policy. This is expressly provided by paragraph four, quoted above, to the effect that the insurance provided by the policy "shall conform to the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising from the use of such liability during the policy period, to the extent of the coverage and limits of liability required by such law." In addition to this, it is well settled in Virginia that the provisions of the statute become a part of the contract of insurance, irrespective of any inconsistent provisions therein contained. Union Indemnity Co. v. Small, 154 Va. 458, 153 S.E. 685; Indemnity Ins. Co. v. Davis' Adm'r, 150 Va. 778, 143 S.E. 328.

▌ The case is narrowed, therefore, to an interpretation of the statutory provision above italicized, which has not as yet been interpreted by the courts of Virginia. It is argued that, since the statute requires that the policy contain a provision insuring the "owner against liability", its language has no application to cases such as this where there is no liability on the part of the owner. Such an interpretation would ignore the language which defines the lia-

bility as that "for damages for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner *or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner."* (Italics supplied). If the coverage be limited to liability of the owner, the italicized language would be given no meaning, and one of the principal purposes of the statute would be defeated, i. e. to eliminate contests over coverage in actions under such policies. In fact, if this interpretation of the italicized portion of the statute be adopted, there would have been no point in its enactment, since under existing law there was no trouble as to the coverage of policies protecting the liability of the owner. One of the ancient canons of interpretation is that the old law, the mischief and the remedy must be considered, and that the statute under consideration must be given an interpretation, if possible, which will suppress the mischief and advance the remedy. Having this in mind, we think that the reasonable construction of the statute is that all automobile liability policies issued within the state shall contain the widely used omnibus coverage clause, covering liability of anyone operating the car with the permission of the owner, whether the owner is liable or not.

■ It is to be noted that this provision of the statute was taken verbatim from a similar statute of the State of New York. The decisions of the Court of Appeals of New York construing it, therefore, would seem to be more than persuasive and to become authoritative under the rule that a statute adopted from another state will be presumed to have been adopted with the construction placed upon it by the courts of that state. James v. Appel, 192 U.S. 129, 135, 24 S.Ct. 222, 48 L.Ed. 377; 59 C.J. 1065–1068; 25 R.C.L. 1069. The New York statute came before the Court of Appeals of that state for interpretation in the year 1931 in the case of Brustein v. New Amsterdam Casualty Co., 255 N.Y. 137, 174 N.E. 304, 305. The court quoted the provisions of Sec. 109 of the Insurance Law, Consol.Laws N.Y. c. 28, the first of which was the standard bankruptcy clause, similar to the first paragraph of Sec. 4326a of the Virginia Code, the second related to notice, and the third was in the exact language italicized in our quotation of the Virginia statute. The court said: "The

standard provisions provided for in section 109 are three in number and are aimed at separate recognized · evils. The standard bankruptcy provision gives the injured person a remedy over against the insurance company when the judgment against the insured is uncollectible by reason of bankruptcy or insolvency. Merchants' Mutual Automobile Liability Ins. Co. v. Smart, 267 U.S. 126, 45 S.Ct. 320, 69 L.Ed. 538. It puts an end to the rule that a contract of liability insurance is to be regarded as one of indemnity only. The second provides a standard rule as to the time and manner of notice to the insurer instead of leaving such matters to be covered by the individual contract. The third is an 'additional interest' clause aimed to protect the public against the operation of a car by others than the owner, provided they have the owner's consent, express or implied. The primary purpose of this requirement is to meet the defense in an action on the policy that the owner was not at the time of the accident operating the car personally or by his agent, although it was being operated by a member of his family or another with his consent express or implied."

A like interpretation was given the statute when applying it to a garage policy in Lavine v. Indemnity Ins. Co., 260 N.Y. 399, 183 N.E. 897, to which we will make further reference hereafter. Early in 1934 the statute was again before the Court of Appeals in Bakker v. Aetna Life Ins. Co., 264 N.Y. 150, 190 N.E. 327; and in an opinion rendered on April 17th of that year affirming a decision of the Appellate Division (240 App.Div. 880, 267 N.Y.S. 956) the court, speaking through Chief Judge Pound, followed the rule as laid down in the Brustein case, saying: "As we said in Brustein v. New Amsterdam Casualty Co., 255 N.Y. 137, 142, 174 N.E. 304, 305: 'The third is an "additional interest" clause aimed to protect the public against the operation of a car by others than the owner, provided they have the owner's consent, express or implied. The primary purpose of this requirement is to meet the defense in an action on the policy that the owner was not at the time of the accident operating the car personally or by his agent, although it was being operated by a member of his family or another with his consent express or implied.' The policy attempts to nullify the 'additional interest' clause as above quoted. When the owner takes out a liability policy, no matter how limited as

to coverage, the provisions of section 109 are a part of the contract."

In a concurring opinion Judge Crane had this to say in interpretation of the act: "The purpose of the provision is apparent. It is made for the benefit of persons injured or suffering damage and not solely for the benefit of the insured. The latter may be one of the reckless impecunious kind, as is so often the case, indifferent to a judgment against him and execution-proof. In other words, he may have no property to respond to money damage. The Legislature has sought to meet this difficulty by providing that, when the insurance company insures an owner of an automobile, it must also assume the risk of damage caused by one operating the car with the owner's consent. * * * The owner is not obliged to insure in all instances, nor is any insurance company obliged to issue a policy to everybody making application, but, when the policy is once issued and the risk assumed, section 109 of the Insurance Law states specifically what this risk shall be."

It is argued that the Highway Act of New York imposes liability on the owner for the negligence of anyone who operates his car upon the highways of the state with his permission. Laws N.Y.1929, vol. 1, c. 54, p. 82, now Consol.Laws N.Y. c. 71. But the interpretation placed by the Court of Appeals upon the section of the insurance act in question is apparently not based in any way upon this provision of the Highway Act, the latter not being even referred to in the decisions. Furthermore the provisions of the insurance act would seem to apply to the coverage of a policy whether liability arises out of operation of the automobile on the highway or not, as where one operating an automobile with the permission of the owner negligently inflicts injury in a private driveway; and the Highway Act as to such liability could not possibly affect its interpretation.

█ And we see no reason to make any distinction between a garage liability policy and any other policy insuring against liability for damages resulting from negligence in the operation of a motor vehicle. The statute makes no such distinction, saying in the broadest possible language "no such policy shall be issued" etc. The policy in question undoubtedly insures against liability for damages resulting from negligence in the operation of a motor vehicle; and it is perfectly clear that the mandate of the statute may not be avoided and the statutory coverage of the policy narrowed by the method followed in the assessment and collection of premiums. That the Bureau of Insurance may have followed a practice not in conformity with the requirements of the statute cannot change its plain meaning.

The policy involved in Lavine v. Indemnity Ins. Co., supra, was a garage policy. A number of defenses were made; and the court, finding error in the trial with respect to some of them, remanded the case for a new trial and marked out the limits of liability in the following language, which expressly held the statutory provision applicable to such a policy, viz.:

"While the policy in question must be read as if it contained the extended liability clause provided for under section 109 of the Insurance Law, it must be deemed limited in amount and coverage as set forth in the contract agreement. The primary purpose of the extended liability clause contained in section 109 is to meet the defense in an action on the policy that the owner was not at the time of the accident operating the car personally or by his agent, although it was being operated by a member of his family or another with his consent, express or implied. The purpose is not to make insurance compulsory or to prevent limitation of coverage. Brustein v. New Amsterdam Casualty Co., 255 N.Y. 137, 174 N.E. 304.

"The policy under consideration must be held limited in coverage to the agreement of the parties as expressed therein. From an examination of the policy and the declarations attached thereto, it is apparent that the policy was intended to cover the ownership or maintenance or use of any automobile for any purpose usual to the assured's operations in the business of auto sales at 225 North Allen Street, Albany, N. Y., including private pleasure use. The premium is based upon the pay roll for that particular business. If the evidence upon a new trial establishes that the car was actually owned by Englert or under his control, and was being driven by a person with the permission, express or implied, of Englert, either upon his business in connection with the Albany sales office, or for private pleasure use, the policy covers." [260 N.Y. 399, 183 N.E. 899.]

For the reasons stated, we are of opinion that the judgment appealed from

should be reversed and the cause remanded to the court below with instructions to enter judgment for plaintiff.

Reversed.