## CLARKE v. HARLEYSVILLE MUT. CASUALTY CO.
## MILLER v. SAME.
### Nos. 4816, 4817.

Circuit Court of Appeals, Fourth Circuit.
Nov. 10, 1941.

Thomas A. Williams, of Richmond, Va. (L. C. O'Connor, of Richmond, Va., on the brief), for appellants.

John G. May, Jr., of Richmond, Va. (May, Simpkins & Young, of Richmond, Va., on the brief), for appellee.

Before PARKER, DOBIE, and NORTHCOTT, Circuit Judges.

DOBIE, Circuit Judge.

In the District Court these two actions were consolidated for a joint hearing. Before us on appeal, only No. 4817 was briefed and argued, but it was agreed that our decision would control the disposition of both actions. Judge Pollard sustained the defendant's motion for judgments on

the pleadings. In affirming Judge Pollard's decision below, we, accordingly, affirm the judgment in both cases.

Judge Pollard, in his opinion, thus set out the facts [37 F.Supp. 983, 984]:

"These two actions, which involve a common question of law and fact, were on motion of all parties consolidated for a joint hearing and trial of all matters in issue in the actions. Rule 42, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. After the pleadings were closed, the defendant moved for judgments on the pleadings. Rule 12(c), R.C.P. For the purpose of passing on the motions, the defendant concedes that all allegations sufficiently pleaded by the plaintiffs must be taken as true. From the allegations of the complaints as amended and the admissions of record made by the plaintiffs in the orders entered on February 5, 1941, the relevant facts are as follows:

"The plaintiffs are residents and citizens of the State of Virginia, and the defendant is a corporation organized under the laws of the State of Pennsylvania and having its principal offices in that State. On the 29th day of November, 1939, the plaintiffs recovered judgments against William C. DeMuth in the District Court of the United States for the District of Delaware, and executions on said judgments remain unsatisfied and no part of said judgments has been paid. The aforesaid judgments were obtained for injuries inflicted by William C. DeMuth in the negligent operation of a certain automobile of the private passenger type belonging to one Ellis Bernstein. At the time of the accident William C. DeMuth was in the employ of Reliable Home Equipment Company but was not then acting for said company, but was on a personal mission of his own. * * * the automobile was being operated by DeMuth with the express permission and consent of the owner, Ellis Bernstein. On October 16, 1935, the defendant issued and delivered to Reliable Home Equipment Company an automobile liability policy covering the period of one year and said policy was in effect when the plaintiffs were injured. By the terms of said policy the defendant agreed to indemnify Reliable Home Equipment Company against loss by reason of the liability imposed upon the assured by law for damages on account of bodily injuries or death accidently sustained by any person or persons not thereinafter excepted by reason of the owner-ship, maintenance or use of the motor vehicles therein described. * * * William C. DeMuth is one of fifteen persons named in the endorsement attached to said policy. Ellis Bernstein is not one of the fifteen persons named in said endorsement."

There is much discussion in the briefs, and the points were stressed on oral arguments, as to the exact nature of the policy issued by the defendant. It seems quite clear, however, that the policy was issued to the Reliable Home Equipment Company as the named insured. The owner of the automobile in question was Ellis Bernstein. The Reliable Home Equipment Company is a duly organized corporation, of which Ellis Bernstein was a stockholder, director and officer. Thus, the policy in question was not issued, insofar as the instant actions are concerned, to the owner of a motor vehicle. Also it is clear that the accident in question was not covered by the express terms of the policy as it was written. This accident, accordingly, is within the coverage of the policy if, but only if, the Omnibus Coverage Clause is compulsorily read into the policy by the provisions of paragraph 2 of section 4326a of the Virginia Code. The only question with which we need concern ourselves then is: Does a non-ownership policy come within the purview of this Statute so as to compel the inclusion of the Omnibus Coverage Clause as a part of the policy? Judge Pollard answered this question in the negative. We think he quite correctly interpreted the Virginia statute.

Section 4326a of the Virginia Code provides:

"§ 4326a. Third person injured by a party carrying indemnity insurance subrogated to rights of such party.—No policy of insurance against loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable, or, against loss or damage to property caused by animals or by any vehicle drawn, propelled or operated by any motive power, and for which loss or damage the person insured is liable, shall be issued or delivered to any person in this State by any corporation or other insurer authorized to do business in this State, unless there shall be contained within such policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injuries sustained or loss occasioned during the life of

such policy, and stating that in case execution against the insured is returned unsatisfied in an action brought by the injured person, or his or her personal representative in case death results from the accident, because of such insolvency or bankruptcy, then an action may be maintained by the injured person, or his or her personal representative, against such corporation under the terms of the policy for the amount of the judgment in the said action not exceeding the amount of the policy.

"No such policy shall be issued or delivered in this State, to the owner of a motor vehicle, by any corporation or other insurer authorized to do business in this State, unless there shall be contained within such policy a provision insuring such owner against liability for damages for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner."

█ The first paragraph of this statute was enacted in the year 1924; the second paragraph, copied verbatim from a Statute of the State of New York, was added as an amendment in the year 1934. As was said by Judge Parker, with reference to the second paragraph of the Statute: "It is to be noted that this provision of the statute was taken verbatim from a similar statute of the State of New York. The decisions of the Court of Appeals of New York construing it, therefore, would seem to be more than persuasive and to become authoritative under the rule that a statute adopted from another state will be presumed to have been adopted with the construction placed upon it by the courts of that state." Newton v. Employers Liability Assurance Corporation, 4 Cir., 107 F. 2d 164, 167.

Accordingly, later in this opinion, we discuss the New York cases construing the statutory paragraph in question.

█ The crux of Judge Pollard's opinion is found in the *difference* between the wording of the opening sentence in paragraph one and the wording of the opening sentence of paragraph two of the Virginia Statute. Said Judge Pollard: "It seems to me that the distinction between ownership and non-ownership policies is not without legal significance. The first par-

agraph of the Virginia statute was enacted in the year 1924, and the second paragraph was added as an amendment in the year 1934. The prohibitory provision of the first paragraph is general and is applicable to both ownership and non-ownership policies. By the very words of the second paragraph of the statute, its provisions are made applicable only to policies issued to the owner of an automobile. The prohibition is against the issuance or delivery of such a policy 'to the owner of a motor vehicle'. It was only necessary had the Legislature desired to make the amendment applicable to both ownership and non-ownership policies to use in the second paragraph the words 'to any person' as it had already done in the first pararaph, and to omit from the second paragraph the words 'to the owner of a motor vehicle' as it had already done in the first paragraph. The Legislature having, in the second paragraph, used the words 'to the owner of a motor vehicle' in preference to the words 'to any person', the courts cannot ignore the significance to be attached to such legislative action, and read the statute into a class of policies which the Legislature has seemingly deliberately excluded from its provisions."

With what Judge Pollard there said, we thoroughly agree.

█ Appellants, with great earnestness, urge that we should overlook this difference in the language of paragraphs one and two of the Virginia statute and that the statute should be interpreted as a whole in the light of its history and purpose. We have often adverted to Saint Paul's great dictum: "The letter killeth but the spirit giveth life." Not infrequently have we applied the time-tested maxim qui haeret in litteris, haeret in cortice. These considerations apply with compelling force when the words of the statute are unclear and ambiguous, and when the words are fairly and reasonably susceptible of two or more interpretations.

We are, however, extremely sensitive to the nature of the judicial process, and cannot legislate into a statute the unexpressed will of the Legislature. The boundary-line separating the judicial and legislative realms is indeed a delicate one; seldom has it been drawn with greater precision than by Mr. Justice Holmes on Circuit: "A statute may indicate or require as its justification a change in the policy of the law, although it expresses that change

502

only in the specific cases most likely to occur to the mind. The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however, indirectly, that will should be recognized and obeyed. The major premise of the conclusion expressed in a statute, the change of policy that induces the enactment, may not be set out in terms, but it is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before." Johnson v. United States, 1 Cir., 163 F. 30, 32, 18 L.R.A.,N.S., 1194.

■ We have probed the language of the statute in question carefully, taking into account all the imponderable connotations which cluster around the words used and are suggestive of the legislative intent. Having done so, we are unable to find any indication that the Legislature intended to make paragraph two of the statute embrace non-ownership policies. On the contrary, the plain and unambiguous language of the statute rebuts any such inference. It is the duty of the court to construe the statute as written and not indulge in interesting speculations as to what the statute might have been but was not. Cf. Federal Trade Commission v. Bunte Bros., 312 U.S. 349, 61 S.Ct. 580, 85 L.Ed. 881. The words in paragraph two of the Virginia statute are quite clear and seem to express a positive and clean-cut legislative intent. Then we cannot torture these words into fanciful meanings; we cannot ignore what appears to have been a crisp legislative distinction expressed in terms that are anything but uncertain. We sit, after all, as an appellate court, administering justice under the law, not as an ancient oriental cadi, dispensing a rough and ready equity according to the dictates of his own unfettered discretion.

Under paragraph one of the Virginia statute, which denies to the insurer the defense of the insolvency of the insured and provides for suit by the injured party directly against the insurer when execution against the insured is returned unsatisfied, the statute employs the very broadest terms: "No policy of insurance * * * shall be issued or delivered *to any person in this State.*" (Italics ours.) While paragraph two of the statute begins: "No such policy shall be issued or delivered in this State, *to the owner of a motor ve-*

*hicle.*" (Italics ours.) Then paragraph two provides, as to policies within its purview, for the inclusion of the Omnibus Coverage Clause. Surely if the Virginia Legislature intended that the scope of paragraph two should be the same (or even similar to) the scope of paragraph one, nothing would have been simpler, when (ten years later) paragraph two was added, than to indicate this intent by the use of the same (or at least similar) words. But this the Legislature did not do. The word "owner" does not appear once in paragraph one, but keeps recurring in paragraph two. Surely this distinction is not without significance.

Appellant further insists that the case of Newton v. Employers Liability Assurance Corporation, 1 Cir., 107 F.2d 164, decided by this court, is determinative of the instant controversy. A careful reading of Judge Parker's opinion in the Newton case leads us to a different conclusion. In the Newton case, the policy was issued to the owner of the motor vehicle causing the damage; so that our problem was in no sense before the court in the Newton case. Appellant stresses one isolated expression torn from Judge Parker's opinion (107 F.2d at page 167): "We think that the reasonable construction of the statute is that all automobile liability policies issued within the state shall contain the widely used omnibus coverage clause." This sentence, however, loses its true significance when thus snatched from its context. Even were these words to be given the broad universality attributed to them by appellant, the words in the Newton case could have at best amounted to no more than a dictum, for the problem of the instant case was not then before the court. But Judge Parker was careful to qualify the words quoted in terms of ownership at other places in his opinion. Thus the word "owner" occurs later in the very same sentence above quoted. Again (107 F.2d at page 167), Judge Parker quotes (from the case of Brustein v. New Amsterdam Casualty Co., 255 N.Y. 137, 142, 174 N.E. 304, 305): "When the *owner* takes out a liability policy." (Italics ours.) And, (107 F.2d at page 168) Judge Parker quotes with approval the concurring opinion of Judge Crane in Bakker v. Ætna Life Insurance Co., 264 N.Y. 150, 190 N.E. 327, containing this expression: "The Legislature has sought to meet this difficulty by providing that, when

the insurance company insures *an owner of an automobile \* \* \*.*" (Italics ours.) What has just been written in this paragraph should apply equally to the expression (greatly relied on by the appellant) in Judge Parker's opinion in the Newton case (107 F.2d at page 168): "And we see no reason to make any distinction between a garage liability policy and any other policy insuring against liability for damages resulting from negligence in the operation of a motor vehicle."

No Virginia case, bearing on the question at issue has been cited by either party. But counsel for appellants and counsel for appellee (both in the briefs and on oral argument) discussed at length certain New York cases. As has been indicated, these cases dealt with the New York Statute, which is the prototype of paragraph two of the Virginia statute. Consequently, these cases do call for some consideration. And this is true though not a single one of these cases involved the precise problem before us, and in none of these opinions is that specific problem even discussed.

Brustein v. New Amsterdam Casualty Co., 255 N.Y. 137, 174 N.E. 304, really decided only that, as regards liability under an automobile policy, a husband receives neither bodily injury nor injury to property due to the loss of the services of the wife. It is clear from the report of this case in the lower court, 135 Misc. 352, 238 N.Y.S. 313, that the policy in question was issued to the owner of the car causing the injury. And Judge Pound, in his opinion in the New York Court of Appeals, continually refers to "the owner" in his discussion of the Omnibus Coverage Clause of the New York Statute.

The real question in Lavine v. Indemnity Insurance Co. of North America, 260 N.Y. 399, 183 N.E. 897, was whether the coverage of the policy included the activities of the assured, in the automobile sales business at Schenectady or only his activities at Albany. There was, in the opinion of Judge Hubbs, considerable discussion of the ownership of the motor vehicle causing the injury; but we find nothing in the opinion that lends any substantial support to the contention of appellants in the instant case.

Finally, there is the case of Bakker v. Ætna Life Insurance Co., 264 N.Y. 150, 190 N.E. 327. Here it is absolutely clear that the assured was the owner of the car, so that the Omnibus Coverage Clause was read into the policy. The only question actually decided (Judges O'Brien and Hubbs dissenting) was that under the Omnibus Coverage Clause the insured could *not* limit its liability to cases where the insured accompanied the driver of the car at the time of the injury. In each of the three opinions filed in this case, the word "owner" recurs frequently and is stressed throughout. And there are, in the opinions filed in this case, quite a few straws which would seem to indicate that the wind of judicial opinion in New York blows directly in the direction of the views that we have, in the instant case, endeavored to express.

We, accordingly, affirm the judgments of the District Court.

Affirmed.