**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation, Plaintiff,**

v.

**Frank T. DREWRY, Robert T. Drewry, Administrator of the Estate of Viola Layne Drewry deceased, Sarah D. Perkins, Defendants.**

Civ. A. No. 476.

United States District Court
W. D. Virginia,
Lynchburg Division.

May 11, 1960.

On The Merits Feb. 16, 1961.

J. B. Browder, Richmond, Va., and Henry M. Sackett, Jr., Lynchburg, Va., for plaintiff.

Paul Whitehead, Lynchburg, Va., for defendants.

BARKSDALE, District Judge.

Since I have come to the conclusion that defendants' motion to dismiss this action must be overruled, I will set out briefly my reasons for this conclusion.

First, as to the matter of jurisdiction: Counsel for defendants contend that this court is without jurisdiction of this action because, in an interpleader action under 28 U.S.C.A. § 1335, the court only has jurisdiction where the adverse claimants to a fund admittedly owing by plaintiff are of diverse citizenship. This contention of defendants would be sound if plaintiff relied for jurisdiction upon 28 U.S.C.A. § 1335. However, plaintiff does not rely on 28 U.S.C.A. § 1335, but relies on the general

854

jurisdictional statute, 28 U.S.C.A. § 1332. Since there is diversity of citizenship between the plaintiff, State Farm, and the defendant claimants, the jurisdictional amount being present, it seems to me that there is no doubt of the court's jurisdiction of this declaratory judgment and interpleader action under the provisions of 28 U.S.C.A. § 1332. John Hancock Mutual Life Ins. Co: v. Kraft, 2 Cir., 200 F.2d 952, Jefferson Standard Life Ins. Co. v. Smith, D.C., 161 F.Supp. 679.

■ Defendants also contend that this action should be dismissed because the full amount of $58,000 claimed by defendants has not been paid into court. However, I know of no rule of law applicable to an interpleader action which requires plaintiff to pay into court more than plaintiff admits as owing.

■ Defendants further contend that, even if this court has jurisdiction, it should dismiss this action because it is primarily for the construction of certain provisions of Section 38.1–381, Code of Virginia, The Uninsured Motorist's Statute, which have not yet been construed by the Supreme Court of Appeals of Virginia, nor indeed by any other Virginia court, and that a federal court should not undertake to construe a Virginia statute until after it has been construed by the Virginia court of last resort. This contention raises the question of the so called abstention doctrine which received the consideration of the Supreme Court in four cases recently. This doctrine is the subject of an interesting article by Professor Kurland of the University of Chicago Law School, 24 Fed. Rules Dec. 481. The four cases are Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058, Harrison v. N. A. A. C. P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed. 2d 1152, Alleghany County v. Frank Mashuda, 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163, and Martin v. Creasy, 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186. As pointed out in the opinions in these cases, under certain circumstances federal courts should decline or temporarily abstain from passing on questions of state law before authoritative action by the appropriate state court of last resort. However, this does not mean that federal courts should always decline or abstain from passing on questions of state law or construing state statutes when there is no previous authoritative declaration of state law from the court of last resort of the state. In diversity cases, quite frequently questions of state law, including the construction of statutes, are presented to federal courts for determination, in some instances where the law has been made clear by state courts of last resort and in some instances where it has not. On several occasions I have been called upon to decide questions of state law in the absence of controlling state decisions. In re Green, D.C., 34 F.Supp. 791, 792; Carroll v. Harrison, D.C., 49 F.Supp. 283, 289, and Simmons v. Simmons, D.C., 41 F.Supp. 545.

■■ In one of the four cases recently decided by the Supreme Court, Alleghany County v. Frank Mashuda Co., supra, in sustaining the decision of the court of appeals that the district court should have adjudicated the case, the court enumerated (360 U.S. at pages 189, 190, 79 S.Ct. at page 1063) what I take to be the situations which would justify abstention, as (1) where the case presents a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law, and (2) when the exercise of jurisdiction by the federal court would disrupt a state administrative process, (3) interfere with the collection of state taxes, (4) or otherwise create needless friction by unnecessarily enjoining state officials from executing domestic policies. It does not seem to me that the instant case falls into any of these categories. Rather the following language of the court in this opinion (360 U.S. at page 188, 79 S.Ct. at page 1063) seems to me applicable:

"The doctrine of absention, under which a District Court may decline to exercise or postpone the exercise

of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."

Of course, it is always discretionary with the district court whether or not it should adjudicate a declaratory judgment action. However, this means a sound discretion, not an arbitrary one, and under the circumstances existing here, I am definitely of the opinion that should I refuse to adjudicate this action, it would constitute an abuse of discretion. It follows that an order will be entered overruling defendants' motion to dismiss.

## On the Merits

On August 28, 1959, the automobile owned and operated by Frank T. Drewry, also occupied by his wife, Viola Layne Drewry, and their daughter, Sarah D. Perkins, was struck from behind on a public highway in Albemarle County, Virginia, by two uninsured motorists, Dean Shifflett and Claude William Shifflett. The two Shifflett automobiles struck the Drewry automobile practically simultaneously, the time between the two impacts being "just a split second". The collision resulted in the death of Mrs. Drewry, and serious injury to Mr. Drewry and Mrs. Perkins. Although the two Shifflett automobiles were uninsured, their owners had, at the time of registering and licensing, paid the additional fee of $15 required at the time of registration by Section 46.1–167.1 of the Code of Virginia, for payment into the State Treasury for inclusion in the "Uninsured Motorists Fund". The Drewry automobile was covered by a public liability policy issued by State Farm Mutual Automobile Insurance Company, liability thereunder being limited to $15,000 for bodily injury to each person, and $30,000 for bodily injury sustained by two or more persons, as a result of any one accident. Under the provisions of this policy, State Farm was obligated to pay to the Drewrys (including Mrs. Perkins) all sums which they should be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, including death, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile, within the limits of liability set out in the policy. For this particular coverage, State Farm had been paid three dollars for the six months period including the date of the collision. A similar fee for uninsured motorist coverage was required by State Farm from all its policy holders in Virginia.

Having given State Farm due and timely notice of their suits against the Shiffletts and that they would rely upon the uninsured motorist coverage of the Drewry policy, Frank T. Drewry, on January 25, 1960, in the Circuit Court of Albemarle County, obtained a judgment in the sum of $21,000 with interest and costs against the two Shiffletts, on February 2, 1960, Sarah D. Perkins obtained a judgment against the two Shiffletts in the sum of $15,000 with interest and costs, and on February 3, 1960, the Administrator of Mrs. Drewry obtained a judgment against the Shiffletts in the sum of $22,000 with interest and costs, an aggregate of $58,000. Frank T. Drewry, Sarah D. Perkins, and the Administrator of Mrs. Drewry, contend that State Farm is liable to them for the full amount of their judgments against the Shiffletts with interest and costs under the uninsured motorist coverage of State Farm's insurance policy. State Farm admits that it is liable on account of these judgments to the full extent of the limits of their policy, and has paid into court the sum of $30,400, which it contends is the full amount of its liability upon the judgments with interest and costs, and has instituted this declaratory judgment action against Frank T. Drewry, Robert C. Drewry, Adminis-

trator of the Estate of Viola Layne Drewry, and Sarah D. Perkins, to determine whether its liability is limited to $30,000, the limit stated in its policy for injury to more than one person, with interest and costs, or whether it is liable for the full amount of the judgments of Frank T. Drewry, the Administrator of Mrs. Drewry, and Mr. Perkins, with interest and costs. The facts have been stipulated, and both plaintiff and defendants have filed motions for summary judgment.

Discussion.

I need not concern myself with the question of whether, under the facts of this case, there was one accident or two. Since the two Shifflett automobiles collided with the Drewry automobile practically simultaneously, it seems clear that there was only one accident, even though two automobiles collided with a third. Saint Paul-Mercury Indem. Co. v. Rutland, 5 Cir., 225 F.2d 689; Denham v. La Salle-Madison Hotel, 7 Cir., 168 F. 2d 576.

The question here presented is a sharp and narrow one, viz.: Did the uninsured motorist coverage of State Farm's policy on the Drewry automobile provide coverage of $30,000, the policy limit, on each uninsured Shifflett automobile, or is the coverage under the policy limited to an aggregate payment of $30,000, the limit set out in the policy?

This is a case of novel impression, no court in Virginia or elsewhere having heretofore passed upon it. The applicable provisions of the insurance policy, so far as pertinent, are as follows:

"Insuring Agreements.

"1. *Damages for Bodily Injury and Property Damage Caused by Uninsured Automobiles.* To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of:

"(a) bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by the insured;

\* \* \* \* \* \*

caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile."

\* \* \* \* \* \*

"Conditions

"5. *Limits of Liability.* (a) The limits of bodily injury liability stated in the schedule as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of such liability stated in the schedule as applicable to 'each accident' is the total limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident."

The applicable statute, Code of Virginia, Section 38.1–381, so far as pertinent, is as follows:

"(b) Nor shall any such policy or contract be so issued or delivered unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of Section 46.1–1(8), as amended from time to time, of the Code herein. \* \* \*.

"(g) No such endorsement or provisions shall contain any provision requiring arbitration of any claim arising under such endorsement or provisions, nor may anything be required of the insured except the establishment of legal liability, nor shall the insurer be restricted or prevented in any manner from employing legal counsel or instituting legal proceedings."

Code Section 46.1–1(8), referred to in (b) above, occurs in the chapter entitled "Motor Vehicles. General Provisions.", under the heading "Definitions". The section is as follows:

"The following words and phrases when used in this title shall, for the purpose of this title have the meanings respectively ascribed to them in this section except in those instances where the content clearly indicates a different meaning; * * *. (8) 'Financial responsibility.'— Ability to respond in damages for liability thereafter incurred arising out of the ownership, maintenance, use or operation of a motor vehicle, in the amount of $15,000 because of bodily injury to, or death of any one person and, subject to limit for one person, in the amount of $30,000 because of bodily injury to or death of two or more persons in any one accident, and in the amount of $5,000 because of injury to or destruction of property in any one accident."

An interesting article entitled "Virginia Takes New Approach to the Uninsured Motorist" appeared in Vol. XVI, No. 1, p. 134, of the 1959 Spring Issue of the Washington and Lee Law Review. Therein it is stated (pp. 134, 135):

"The Virginia General Assembly at its 1958 session came up with a new plan for dealing with the uninsured motorist and his traffic victims. Although the Virginia Advisory Legislative Council had recommended the adoption of the New Jersey Plan of an Unsatisfied Claim and Judgment Fund, this recommendation was rejected in favor of a plan based on use of the uninsured Motorist Rider, which had given optional coverage under the ordinary liability policy.

"The first state to take any action whatsoever was Massachusetts, which adopted a compulsory liability plan in 1925. Similar legislation became effective in New York in 1957 and in North Carolina in 1958.

This type of plan eliminates the problem of the resident uninsured motorist, but not that of the nonresident uninsured driver. Nonresidents could be reached only with costly and unpopular points of entry check stations. A second objection to compulsory liability insurance is that it gives no protection to the victim of a hit and run driver.

"Another approach was developed in New Jersey which utilizes an Unsatisfied Claim and Judgment Fund. This plan provides coverage in the two instances that compulsory liability insurance does not reach. New Jersey assesses a special registration fee that is earmarked for the fund; if the automobile is uninsured, the fee is higher. Any deficiency in the fund is made up from assessments against the insurers doing business in New Jersey on the basis of their premium income from such business within the state. Each year's fee is determined on the past year's experience and subject to maximum limitations. The fund so created is held in trust to provide a source from which collision victims can collect on judgments which otherwise would not be satisfied."

The article further discusses certain phases of the law and suggests problems which will probably arise, but the particular question with which I am faced, is not discussed.

In the most recent issue of the Virginia Law Review, Jan. 1961, Vol. 47, No. 1, p. 145, there is another article on the subject, entitled "Uninsured Motorist Coverage in Virginia", the prefatory paragraphs of this article being as follows (pp. 145, 147):

"The insurance industry is one of society's principal means of protecting itself from the damage caused by accidents on the highways. One of the chief modern problems in this area is that of the uninsured motorist who offers nothing with which he can recompense the victims of his negligence.

"It has been estimated that at least one-third of the automobile accidents in Virginia involve an uninsured vehicle. The acuteness of the problem of protecting the innocent victims of the uninsured motorist has forced the legislatures of many states to take action designed to correct the problem. Insurance in one form or another has become the common medium of protection.

"The financial responsibility law has been the most widely used manner of approaching the uninsured motorist problem. Massachusetts, New York, and North Carolina have turned to compulsory insurance. On the other hand, North Dakota, New Jersey, and Maryland have adopted legislation creating Unsatisfied Judgment Funds. Foreign governments have found their solution to this problem in various types of legislation, including compensation.

"The legislatures of New Hampshire, Virginia, California, and to some extent New York, have sought to attack the problem of the uninsured motorist through the means of an uninsured motorist endorsement to the insured motorist's liability policy.

"Virginia's law is the thesis of this Note. Careful study of the Virginia solution reveals many problems which apparently were not considered by the General Assembly in drafting the legislation. Moreover, in many instances the standard policy approved by the State Corporation Commission conflicts with the statute. This Note will deal with these problems after a brief examination of the mechanics of the uninsured motorist endorsement under Virginia Law.

"The Uninsured Motorist Law

"The Virginia Uninsured Motorist Law, first passed by the 1958 session of the General Assembly and amended in minor respects by the 1959 Special Session and the 1960 regular session, grew out of the realization that existing laws were not sufficient to effectively combat the problem of the uninsured motorist. It was recognized that the prudent person might protect himself against the uninsured by taking out life, health, or other similar types of insurance, but such voluntary protection was not favored since it placed the burden of paying for the negligence of the uninsured motorist squarely on the shoulders of the innocent victim. The General Assembly, contrary to the recommendations of the Virginia Advisory Legislative Council, selected the medium of the relatively untested uninsured motorist endorsement as the best means of shifting the cost of uninsured motorists' negligence to the uninsured motorist himself.

"To produce this result, the Code was amended in three places and many of the requirements of the still effective Financial Responsibility Law were incorporated into the amendments by reference. The end product is a highly complicated system of statutes, spread over at least three titles of the Code, which might well be termed the Virginia Uninsured Motorist Law."

■ Although counsel advise that the question here presented has not been passed upon by any court anywhere, my attention has been called to the unreported case of Shelby Mutual Insurance Co. v. Spivey, decided September 23, 1960, in the Circuit Court of the City of Portsmouth, Virginia, by Honorable Henry W. MacKenzie, Jr., Judge, which arose under the Uninsured Motorist Law, and I have been supplied with a copy of the opinion. The gist of this decision is that no provision or requirement in an insurance policy is valid if in conflict with the statutory requirements. I am advised that the Honorable Charles E. Burks, Judge of the Circuit Court of the City of Lynchburg, made an identical ruling, but without written opinion, in the recent case of Thomas Preston Brown v.

Edward Eugene Grubbs and John Doe. This has been long settled law in Virginia. Newton v. Employers Liability Assurance Corp., 4 Cir., 107 F.2d 164, Maxey v. American Casualty Co., 180 Va. 285, 23 S.E.2d 221. Indeed, in the Newton case, Judge Parker, speaking for the court, went further to hold that no ruling or practice followed by the State Bureau of Insurance, not in conformity with the requirements of the statute, could change its plain meaning.

It seems to me that, if the contention of the Drewrys (defendants here) should prevail, it would have to be upon the theory that the effect of the Uninsured Motorist Law is to provide insurance, up to the statutory minimum limit, on each uninsured vehicle which may be involved in an accident. At the outset this theory seems very questionable, because, if sound, one uninsured motorist injured by the sole negligence of another uninsured motorist, should be able to look to the insurance covering the vehicle of the negligent uninsured motorist for the payment of his damages. Obviously, this result does not follow because there is no insurance company to look to. Nor is there any provision whatever in the Virginia statutes providing for payment to any insured person out of the Uninsured Motorist Fund created under the provisions of Section 46.1–167.6, *post*. Examining the statutes applicable to uninsured motorists, I find that Code Section 46.1–167.1 provides:

"In addition to any of the fees prescribed by law, every person registering an uninsured motor vehicle * * * shall pay at the time of registering the same a fee of fifteen dollars." (This section was amended in 1960 to raise the fee to $20.-00).

Section 46.1–167.6 provides that "all funds collected by the Commissioner under the provisions of this article shall be paid into the State treasury and held in a special fund to be known as the Uninsured Motorists Fund to be disbursed as provided by law. * * * "

Section 12–65 provides that the uninsured motorists fund shall be under the control of the State Corporation Commission.

Section 12–66 provides that the Commission shall annually distribute the fund among the several insurance companies writing public liability insurance in the state "in the proportion that the premium income for the basic limits coverage of each insurance company (that is, gross premiums less cancellation and return premium) for the coverage required by paragraph (b) of Section 38.1–381 of the Code of Virginia bears to the total of such premium income for such coverage written in the State during the preceding year; provided that before distributing such Fund among such companies, the Commission shall annually first determine the proper rate, arrived at in a manner prescribed by the Commission," in accordance with the general procedures set out in the Code in regard to the fixing of rates. The section further provides:

"Should the amount in the Fund exceed the amount necessary to cover the entire costs to policy holders of the coverage required by paragraph (b) of § 38.1–381 of the Code, or if for any other reason such funds, or any of them, cannot be so expended, the balance remaining in the Fund shall be paid into the general fund in the State treasury. It is the intent of this section that each policy holder shall have the cost of such endorsement or provision reduced through such adjustment of rate, so far as possible out of the funds collected from uninsured motorists, and distributed as provided herein, and that such endorsement is intended to serve as an added inducement to the uninsured motorist to procure insurance coverage. * * * ."

█ In none of these Code sections do I find anything to indicate that the payment of the fee (formerly $15.00, now $20.00) required of the uninsured motorist, nor the payment by the insured

motorist of the special fee for the endorsement providing coverage for injury by an uninsured motorist, have the effect of creating any insurance coverage on vehicles operated by uninsured motorists. This seems to me to be of paramount importance in the consideration of the question here presented, because if the effect of the law was to create insurance coverage on uninsured vehicles, there would be double liability here, because defendant's injuries were caused by two vehicles. However, I am definitely of the opinion that the effect of the Uninsured Motorist Law is not to provide insurance coverage upon each and every uninsured vehicle, but is to provide coverage to the insured motorist, his family, and permissive users of his vehicle, against the peril of injury by the uninsured motorist. Assuming this view of the purpose and effect of the law to be sound, I can see no reason why the insurer may not limit its coverage, the limit of course to be not less than that required by the statute. The very fact that the Uninsured Motorist Law requires minimum limits, seems to me to support this view.

■ It is true that Newton v. Employers, etc., supra, was decided prior to the enactment of the Uninsured Motorist Law, and was dealing with questions arising under the statutory provision requiring the extension of coverage of the named insured to persons legally using or operating the vehicle of the named insured with the permission, express or implied, of such owner. However, it seems to me interesting and pertinent that, in the Newton opinion, (107 F.2d at page 168), the court quotes approvingly as follows from Lavine v. Indemnity Insurance Company, 260 N.Y. 399, 183 N.E. 897, 899, as follows:

> " 'While the policy in question must be read as if it contained the extended liability clause provided for under section 109 of the Insurance Law [McKinney's Consol.Laws, c. 28,] it must be deemed limited in amount and coverage as set forth in the contract agreement. The primary purpose of the extended liability clause contained in Section 109 is to meet the defense in an action on the policy that the owner was not at the time of the accident operating the car personally or by his agent, although it was being operated by a member of his family or another with his consent, express or implied. The purpose is not to make insurance compulsory or to prevent limitation of coverage. Brustein v. New Amsterdam Casualty Co., 255 N.Y. 137, 174 N.E. 304.

> " 'The policy under consideration must be held limited in coverage to the agreement of the parties as expressed therein.' "

The "Uninsured Motorists Coverage in Virginia" article in the recent issue of the Virginia Law Review, supra, does briefly discuss the very question presented here (pp. 173, 174):

> "The same limitation applies when one or more policies cover an injury caused by the concurrent negligence of several uninsured motorists. Though the insured is protected from the risk of each uninsured motorist, there can no more be separate recovery when they converge to cause an injury exceeding the limits of any policy than there could be in a similar instance under a homeowner's comprehensive policy. The theory that the Uninsured Motorist Law provides each uninsured motorist with insurance for the benefit of the insured falls down in this area. A literal application of this theory would have the effect of giving each concurrently negligent uninsured motorist $15,000/$30,000/$5,000 coverage for the benefit of the insured whether there were one or more policies applicable to the insured. A clearer expression of the legislative intent than is provided by section 38.1–381(h) would seem necessary to produce such an unusual result."

For the reasons stated herein, it is my conclusion that State Farm is not li-

able for any amount in excess of the agreed limit of coverage set out in its policy, i. e., $30,000 with interest and costs. Since State Farm has paid this amount into court, it will be distributed between defendants, Frank T. Drewry, Mrs. Perkins and Mrs. Drewry's Administrator, prorata, after payment of costs which State Farm is entitled to recover.

An order will be entered accordingly.