The TRAVELERS INDEMNITY COM-
PANY, Plaintiff,

v.

Mildred Yancey WELLS, Executrix of the
Estate of Willie Wells, Deceased, and
Mildred Yancey Wells, Defendants.

Civ. A. No. 482.

United States District Court
W. D. Virginia,
Danville Division.

Oct. 10, 1962.

Edwin B. Meade of Meade, Tate &
Meade, Danville, Va., for plaintiff.

Don P. Bagwell, of Tuck, Bagwell,
Dillard & Mapp, South Boston, Va., Fred
B. Gentry of Gentry, Locke & Rakes,
Roanoke, Va., for defendants.

DALTON, Chief Judge.

This is a declaratory judgment action filed by The Travelers Indemnity Company to determine whether there is any liability on it by reason of a public liability insurance policy, containing the uninsured motorist endorsement required by Virginia law, issued to Willie Wells Garage on March 13, 1960. The facts of the case, unlike the point of law they raise, are very clear and almost entirely undisputed:

On July 24, 1960, a 1956 Buick, licensed in the State of Virginia and owned and operated by Floyd Lee Smith, was struck by a 1959 Chevrolet owned and operated by John George Stahl on a Delaware highway. The collision was due solely to the negligence of Stahl, and it has since been determined that he was uninsured. Riding in the car with Mr. Smith, the driver, at the time of the accident, were his wife, Frances Wells Smith, their two children, Wanda Lee Smith and Sidney Wells Smith; Joseph V. Price and Esther Wells Price; and the two insureds under Travelers' policy, Willie Wells and Mildred Yancey Wells. Willie Wells and Sidney Wells Smith were killed, and the remaining occupants of the car suffered extensive personal injuries.

The Smiths, under their uninsured motorist endorsement asserted claims against and collected from Fidelity and Casualty the full $30,000.00 allowed by Fidelity's policy, and it was conceded that the claims of the Wellses are in an amount in excess of $30,000.00. The Smith payment came about as follows:

Floyd Lee Smith was insured by the Fidelity and Casualty Company of New York under an uninsured motorist endorsement identical to the one in Travelers' policy. These endorsements, entitled Family Protection Coverage Endorsements, are prescribed as to form by the State Corporation Commission under authority of Section 38.1–382, Code of Virginia (1950), as amended, and are required by law to be included in automobile liability policies issued in this state.

Section 38.1–381(c), Code of Virginia (1950), as amended, defines an insured as:

"* * * the named insured and, while resident of the same household, the spouse of any such named insured, and relatives of either, *while in a motor vehicle or otherwise,* and any person who uses, with the consent, express or implied, of the named insured, the motor vehicle to which the policy applies *and* a guest in such motor vehicle to which the policy applies or the personal representative of any of the above." (Emphasis added)

Under this statutory definition all the passengers in the Smith car were insureds under Fidelity and Casualty Company's endorsement, while Willie Wells and Mildred Yancey Wells were also insureds under Travelers' endorsement. Minimum liability under each endorsement is fixed by statute at $15,000.00 for injuries or death to one person, $30,000.00 for injuries or death to more than one person, and $5,000.00 for property damage; and as a practical matter all endorsements issued in Virginia provide the minimum coverage and no more, since the State Corporation Commission has approved only one form that is standard in all respects, including amount. The endorsements contain "Other Insurance" clauses that have also been approved and standardized by the State Corporation Commission. Those clauses read as follows:

"6. *Other Insurance.* With respect to bodily injury to an insured while occupying an automobile not owned by the named insured under this endorsement, the insurance hereunder shall apply only as excess insurance over any other similar insurance *available to such occupant,* and this insurance shall then apply only in the amount by which the applicable limit of liability of this endorsement exceeds

the sum of the applicable limits of liability of all such other insurance." (Emphasis added.)

Note: This first clause is the one which is relevant here.

"With respect to bodily injury to an insured while occupying or through being struck by an uninsured automobile, if such insured is a named insured under other similar insurance available to him, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable under this endorsement for a greater proportion of the applicable limit of liability of this endorsement than such limit bears to the sum of the applicable limits of liability of this insurance and such other insurance.

"With respect to bodily injury to an insured and subject to the foregoing paragraphs, if the insured has other similar insurance available to him against a loss covered by this endorsement, the company shall not be liable under this endorsement for a greater proportion of such loss than the applicable limit of liability hereunder bears to the total applicable limits of liability of all valid and collectible insurance against such loss.

"With respect to property damage, the insurance afforded under this endorsement shall be excess insurance over any other valid and collectible insurance against such property damage. * * *"

The Fidelity and Casualty Company of New York, once it had determined that John George Stahl was an uninsured motorist, recognized its liability of $30,000.00 as a result of the accident but was hesitant to pay the amount to any of its insureds until judgments had been obtained against Stahl, since the Virginia statute gives a covering insurance company subrogation rights against the uninsured motorist, and Fidelity and Casualty wished to preserve these rights (Section 38.1–381(f) of the Code of Virginia (1950), as amended. Accordingly, judgments were obtained on February 4, 1961, against Stahl in the amount of $15,000.00 each in favor of Floyd Lee Smith and Floyd Lee Smith, Administrator of the estate of Sidney Wells Smith, deceased. The Fidelity and Casualty Company of New York promptly paid the $30,000.00 in exchange for a release by all occupants of the car. In signing this release, Mildred Yancey Wells, in her own right, and as Executrix of the estate of Willie Wells, expressly reserved any rights she might have against Travelers Indemnity Company resulting from the accident. The proceeds from the Fidelity and Casualty Company uninsured motorist endorsement were completely exhausted by payments to the Smiths, but the Wellses received nothing thereunder.

■ Although a diligent search has been made to ascertain whether there are any reported court decisions on the point at issue, none have been found. It is unfortunate that the Supreme Court of Appeals of Virginia has not yet had an opportunity to consider and pass upon the Uninsured Motorist Law as it relates to our problem, but not having done so, it is our responsibility here to reach a conclusion—not from precedent, but from applicable statutes and policy provisions, construing policy provisions against the insurer and resolving conflicts between policy provisions and statutory law in favor of the statutes.

Travelers argues that the "Other Insurance" provisions (above quoted) are valid and operative and that the meaning of "available" in clause one is "available at the time of the accident," and does not mean some time subsequent thereto. Therefore, Travelers continues, by the terms of clause (1) of the "Other Insurance" provisions, Travelers is, by the words of the insurance contract, relieved of any and all liability by reason of Fidelity and Casualty's $30,000.00 payment to the Smiths.

The Wellses, on the other hand, contend that the "Other Insurance" provision of the Family Protection Coverage Endorsement as approved by the State Corporation Commission, if interpreted as plaintiff contends, conflicts with the statutory requirements regarding uninsured motorist coverage, and therefore to make the clause effective under the statute, the words "available to such occupant" must be interpreted to mean actually available to the insured, thus establishing liability on the part of Travelers to the Wellses since there is no insurance actually available to them—Fidelity and Casualty's $30,000.00 having been exhausted in paying off the Smiths' judgment.

In considering the "Other Insurance" clause, it is necessary to examine, by way of background, the relationship between this Commission approved form and the statute which the form purports to implement. The State Corporation Commission is vested with the power to promulgate standard forms for insurance contracts which must be used by all companies writing insurance in Virginia. (Section 38.1–382 of the Code of Virginia (1950), as amended.) The Commission, of course, does not have any right to require adherence to contract forms which violate statutory provisions, and wherever such a conflict between form and statute is found to exist, the statute is controlling and the Commission's conflicting form provision is null and void. Maxey v. American Casualty Co. of Reading, 180 Va. 285, 23 S.E.2d 221 (1942); State Farm Mutual Automobile Ins. Co. v. Duncan, 203 Va. 440, 125 S.E.2d 154 (1962).

It would seem that the Family Protection Coverage Endorsement form, as approved by the State Corporation Commission, does conflict in certain respects with the statutory requirements regarding uninsured motorist coverage. For example, Section 38.1–381(h) of the Code of Virginia (1950), as amended, provides:

"The provisions of paragraphs (a) and (b) of this section [requiring an omnibus clause and the uninsured motorist endorsement] shall not apply to any policy of insurance to the extent that it covers the liability of an employer under any workmen's compensation law, but *no provision or application of this section shall be construed to limit the liability of the insurance company, insuring motor vehicles, to an employee or other insured under this section who is injured by an uninsured motor vehicle.*" (Emphasis and comment added.)

This section clearly states that any payment under workmen's compensation coverage may *not* be used to reduce payments to an employee who is also insured under an uninsured motorist endorsement. Yet the Commission approved uninsured motorist endorsement form includes the following condition clause:

"*Limits of Liability*

\*      \*      \*      \*      \*      \*

"(d) Any amount payable to an insured under the terms of this endorsement *shall be reduced* by (1) all sums paid to such insured for bodily injury or property damage by or on behalf of the person legally liable therefor and (2) *the amount paid and the present value of all amounts payable to such an insured under any workmen's compensation law,* exclusive of non-occupational disability benefits." (Emphasis added.)

By allowing reduction of payments under the endorsement by any amount paid or owing from workmen's compensation coverage, this clause is in conflict with the statute and doubtless would be considered ineffective regarding the workmen's compensation payment reduction. Furthermore, since Section 38.1–381(h) uses the words "employee or other insured," the scope of that section seems to encompass more than workmen's compensation payments. In 47 Virginia Law Review 145 (1961) the writer concludes that this statutory section includes payments under bodily liability insurance such as might occur if a guest were injured due

to the concurring gross negligence of the host driver and the negligence of an uninsured motorist. In that situation the guest would have a right of action against his host and against the uninsured motorist, with the host's insurance company providing coverage in both actions. Commenting on that situation as it relates to the Virginia statute and the Commission approved form, the writer states at p. 172, footnote 128:

"* * * The injured insured would thus have a claim against the insured motorist for his liability and against the insured motorist's insurer for the uninsured motorist's liability. [The approved form] provide(s) that in such a case the insured can diminish its liability under the uninsured motorist coverage by the amounts paid under the insured motorist's liability coverage and vice versa. *This provision violates § 38.1–381(h) in that it acts to diminish the recovery of the injured insured under the uninsured motorist coverage,* for it would allow the insured in the hypothetical to pay $15,000 based on the insured motorist's liability and eliminate its liability under the uninsured motorist coverage." (Emphasis and comment added.)

Supplementing the original article in the Virginia Law Review (above mentioned), by Collins Denny III, in an article to be published in the October, 1962 issue of the Review, the same writer comments on additional conflicts which exist between the Commission approved form and the Virginia statute. He writes:

"* * * there is no statutory requirement of contact between the insured vehicle and the vehicle operated by John Doe. Thus a policy provision requiring contact is invalid because it limits coverage which the statute requires the insurer to write."

Thus the requirement of contact found in the policy definition of a hit-and-run automobile is deemed void and of no effect. Furthermore, he analyzes the Virginia Court's holding in Nationwide Mut. Ins. Co. v. Harleysville Mut. Cas. Co., 203 Va. 600, 125 S.E.2d 840 (1962) and concludes that there is still another conflict between the approved form and the statute. He summarizes the court's holding that a mere guest in an automobile which is being driven without the consent of the owner of the car is not covered by the uninsured motorist endorsement of the owner's policy because she was not a guest in the *insured automobile,* and then continues:

"Suppose, however, the injured passenger had also been a relative of the named insured under the Harleysville policy and a resident of his household. Under those circumstances the injured passenger would have been an insured under the Harleysville policy whether in a motor vehicle or not. But would this passenger have been able to recover under the Harleysville uninsured motorist coverage? *The policy says no, but the Court inferred yes* by drawing a distinction between the passenger in the case before it and a member of his household * * *

"The Harleysville case is * * * authority for the proposition that the vehicle named in the liability portion of a policy may at the same time be an uninsured motor vehicle under uninsured motorist coverage of the same policy, although the insureds in this situation are only the named insured, and, while resident of the same household, his spouse and the relative of either." (Emphasis added.)

Although it is true that the Corporation Commission's interpretation of legislative intent is entitled to great weight, Commonwealth v. Appalachian Electric Power Co., 193 Va. 37, 68 S.E.2d 122 (1951), it appears that in their continuing approval of the standard Family Protection Coverage Endorsement form, the Commission in several situations has not adjusted the provisions of its form to meet statutory requirements. Plain-

tiff, in its brief, points out that with the exception of an arbitration clause, which is expressly prohibited by the statute, the form adopted by the Corporation Commission is almost exactly the same as that used by the insurance companies on a voluntary basis prior to the passage of the Virginia Uninsured Motorist Law. When viewed in light of the apparent conflicts just discussed, this fact would seem to indicate a more or less automatic acceptance of the insurance companies' form on the part of the Commission without a thoroughgoing examination of that form as it relates to Virginia's complex statutory requirements.

In fact, as Mr. Denny points out in his latest article, a new set of forms, entitled Protection Against Uninsured Motorist Insurance A689a and A690a, is presently being considered by the Commission to replace the old Family Protection Coverage Endorsement, which would seem to indicate that the Commission itself realizes the inadequacy of its old forms.

Thus, from the foregoing background, it is clear that the Commission approved form must be subject to close examination by the Court, both as to validity under the Virginia statute, and as to construction, so as to reach results in conformity with the statutory mandate and the intent of the legislature of Virginia.

Considering first the validity under Virginia's statute of the first "Other Insurance" clause of the standard policy, and interpreting the words "available to such occupant" for the moment to mean available at the time of the accident as the plaintiff contends, the only statutory provision with which this clause could be in conflict would seem to be Section 38.1–381(h) which states in part:

> " * * * no provision or application of this section [meaning all of section 38.1–381 which sets out much of Virginia's Uninsured Motorist Law] shall be construed to limit the liability of the insurance company, insuring motor vehicles, to an employee *or other insured* under this section who is injured by an uninsured motor vehicle." (Emphasis and comment added)

This statutory mandate seems to present a sweeping prohibition against any limitation of the minimum liability requirements to anyone who is insured under the Uninsured Motorist Law. We have already seen how certain policy provisions are in obvious conflict with this statute's requirements, and it appears reasonable to say that the "Other Insurance" clause before us, if interpreted as plaintiff contends, conflicts with it also. For this clause does more than provide for fair distribution of a loss between two insurance companies, as an ordinary "pro rata" clause does; it does more than obligate one insurance company to pay only the excess of a loss suffered after the other insurance company's limits of liability are paid out, as an "excess" clause does. In both the "pro rata" and "excess" type clauses, the injured party gets full recovery for loss suffered up to the sum of the limits of both policies, and the clauses operate only with a view toward distributing the liability between the companies and not for the purpose of cutting off an injured party from insurance funds. But the "Other Insurance" clause before this Court, as this case amply demonstrates, has for its primary purpose the limitation of total recovery, regardless of actual loss suffered or the number of policies involved, to $30,000.00 in any one accident. The element of distribution in the clause, providing that the insurer of the host pay first, is a secondary consideration to the limiting effect of the clause. Moreover, it is interesting to note that, since the Corporation Commission has approved a form containing only the $15,000/$30,000/$5,000 uninsured motorist coverage, this clause will operate, wherever two policies written in Virginia are involved, as they are here, not merely to limit the liability of the insurer whose named insured happens to be a guest in another car, but to absolve that insurer of liability alto-

gether even though the named insured has suffered extensive personal injury and paid a premium for his coverage. Certainly an outright "escape" clause, absolving an insurer from any liability where any other insurance is present, would be patently invalid under Section 38.1–381(h). Yet this clause will have the effect of an "escape" clause wherever another Virginia policy is present, which undoubtedly will be most of the time. The facts that the insurance industry believes that the $30,000.00 limit is absolutely unalterable in this situation and that legislation has been passed to that effect in at least one other state do not dull the impact of Section 38.1–381(h) nor empower the Corporation Commission to ignore it. See Cheek, "Recovery Procedure Under the Uninsured Motorist Coverage of the Family Liability Policy", 1960 Ins.L.J. 723; Cal. Ins.Code 11580.2 (Supp.1961). Neither do they diminish the effect of the continuing judicial cry that Virginia's Uninsured Motorist Law is *not* designed to provide liability coverage for uninsured motorists but rather to supply compensation for injured insureds who cannot afford to absorb the loss they have suffered and who have paid a premium for insurance protection against that loss. See State Farm Mutual Automobile Insurance Co. v. Drewry, D.C., 191 F.Supp. 852 (1961); Nationwide Mut. Ins. Co. v. Harleysville Mut. Cas. Co., supra; Doe v. Brown, 203 Va. 508, 125 S.E.2d 159 (1962); Horne v. Superior Life Insurance Company, 203 Va. 282, 123 S.E.2d 401 (1962).

From the foregoing analysis it appears to this Court that if "available to such occupant" in the first "Other Insurance" clause is construed to mean available at the time of the accident, as the plaintiff maintains, the clause is very likely to be in conflict with Section 38.1–381(h) of the Virginia Code because it does constitute a limitation on "the liability of the insurance company, insuring motor vehicles, to an employee or other insured under * * * [38.1–381] who is injured by an uninsured motor vehicle."

But this Court is reluctant to rest its decision on such a conclusion because Virginia's Supreme Court of Appeals has not had an opportunity to so construe the Virginia statute.

And fortunately such a holding is unnecessary because of the phraseology of the clause itself. This clause says Travelers insurance in this situation shall " * * * apply only as excess insurance over any other similar insurance available to such occupant * * * " In construing this phrase, all ambiguities must be resolved in favor of the insured and against the insurer. This Court must decide whether the phrase is to be narrowly construed in such a way as to include only those claimants who race fastest in getting suits filed and judgments thereon up to $30,000.00, or whether the proper interpretation of the phrase would include the Wellses, who, within the statutory time permitted by law, filed their suit for a judicial determination of their right of recovery only to find their insurer claiming that since there were funds "available" at the time of the accident, there are not any available now to pay for their injuries. This kind of legal double talk must be difficult to understand for a seriously injured insured who has paid a premium for insurance coverage against the very type of injury he has suffered. It is equally difficult for this Court to approve such a theory in light of the avowed purpose of Virginia's Uninsured Motorist Law.

In commenting upon the purpose of the Uninsured Motorist statute, Judge Barksdale said at p. 860 of State Farm Mutual Automobile Insurance Co. v. Drewry, 191 F.Supp. 852 (1961):

" * * * I am definitely of the opinion that the effect of the Uninsured Motorist Law is not to provide insurance coverage upon each and every uninsured vehicle, but is to provide coverage to the insured motorist, his family, and permissive users of his vehicle, against the peril of injury * * * ."

In the same vein, Virginia's Supreme Court of Appeals said in Nationwide Mut. Ins. Co. v. Harleysville Mut. Cas. Co., supra:

"The intent of the General Assembly in enacting the 'Uninsured Motorist Act,' was to provide benefits and protection against peril of injury by an uninsured motorist to an insured motorist, his family and permissive users of his vehicle. It was not enacted to provide insurance coverage upon each and every uninsured vehicle to everyone."

In commenting on this particular quote, Mr. Denny in his latest article stated:

"Difficulties under the Uninsured Motorist Law will often vanish if this cardinal principle is kept in mind."

Likewise in Doe v. Brown, 203 Va. 508, 125 S.E.2d 159 (1962) at p. 163, the Supreme Court of Appeals said:

"Moreover, the insurance company issued its policy in accordance with the statute, § 38.1–381(b), which requires all automobile bodily injury liability and property damage liability insurance policies to contain an endorsement or provisions undertaking to pay to the *insured*, within certain prescribed limits, all sums which he shall be legally entitled to recover for bodily injury and property damage from the owner or operator of an uninsured motorist vehicle; and under the provisions of the statute, § 38.1–381(c), and the endorsement on the policy the plaintiff is an *insured* covered by the policy. By accepting the risk under this coverage the insurance company received an additional premium from the named insured and became entitled to share in the uninsured motorist fund created by statute requiring all persons registering an uninsured motor vehicle to pay each year a fee * * *.

"To permit the insurance company, which is allowed to file pleadings and have control over the proceedings through John Doe, to escape liability on the constitutional ground asserted would allow it to escape a risk which it has accepted, under the requirement of § 38.1–381(b) and to become unjustly enriched."

In Matthews v. Allstate Insurance Co., 194 F.Supp. 459 (1961), Judge Hoffman commented at pp. 467–468:

"* * * considering the purpose of the legislation, the intent of the legislature, while perhaps not clear, would point to a positive obligation to pay irrespective of procedural defects."

And in Horne v. Superior Life Insurance Company, 203 Va. 282, at p. 285, 123 S.E.2d 401, at p. 404 (1962) the court commented:

"* * * * It is not the purpose of the uninsured motorist law to provide coverage for the uninsured vehicle, but its object is to afford the insured additional protection in event of an accident. Here, Aetna * * * does not insure [the uninsured motorist] against liability. *It insures [the named insured] and others protected under the policy against inadequate compensation.* * * * [The named insured] chose to provide, at her expense, additional protection under the uninsured motorist provision for herself and others protected thereby." (Emphasis and comment added.)

Although none of these decisions rest on facts similar to the case at bar, their cumulative effect is persuasive in construing the word "available" to mean actually available. For this emphasis on insurance for the injured parties rather than for the uninsured motorist seems fully justified.

The reason for requiring compulsory uninsured motorist coverage in Virginia was to give needed relief to injured parties through insurance paid for by the insured and assessments from uninsured

motorists. No benefit was intended to accrue to the uninsured motorist since full subrogation rights in favor of the insurer are preserved in the law. Va. Code Ann. 38.1–381 (f), (h). The fact that actions are brought against the uninsured motorist and insurance payments are predicated upon the legal liability of the uninsured seems to be the procedural route to a policy goal, and, in construing the insurance contract provisions, one should keep foremost in mind the public policy which motivated this whole statutory setup, which is of course compensation to an injured party who was not at fault and who cannot afford to bear the loss which he has suffered. In this context "available" must be construed to mean actually available for the use of the injured party. As one writer said:

> "Compulsory insurance laws are designed for the protection of the public. They make certain that a minimum amount of insurance exists and can be collected from an identified insurer. If a coverage action is brought before the damage action is satisfied, this intent can be fulfilled only if the judgment clearly points out that the complying carrier is fully liable to the extent of its limits regardless of the existence of other insurance." 13 Hastings L.J. 188 (1961–62)

Mr. Edward E. Lane, an insurance attorney of the Richmond, Virginia, Bar and a member of the General Assembly who took a part in the framing and enactment of Virginia's Uninsured Motorist Law, discussed this problem in a speech on February 11, 1961, at the annual Seminar of Virginia Trial Lawyers at Williamsburg, Virginia, and gave the following illustration:

> "*Four Persons in One Vehicle Injured Through Negligence of One Uninsured Motorist*
>
> "In the event there is only one policy involved it is clear that the maximum recovery would be $30,-000. The problem arises where one

or more of the injured plaintiffs can bring themselves under more than one policy.

> "For example suppose two of the plaintiffs brought actions under one policy and two other plaintiffs brought actions under a different policy. If this is permissible there could be a recovery of up to $60,000 for the negligence of one uninsured motorist. Any limit would be determined by the number of plaintiffs and the number of policies.

> "*The argument in support of this position would seem to center directly on the legal situation.* Each plaintiff would secure a judgment and bring an action on a policy. If four plaintiffs bring an action on one policy the maximum recovery would be $30,000. This, of course, would bring about a race to see who could complete their actions the fastest since the last two would have no recovery.

> "On the other hand two of the plaintiffs might bring their action on a different policy and thus each of the four would have a maximum of $15,000 with a total coverage of $60,000.

> "SUMMARY
>
> "The broad question presented by any such situation is whether the law places the determination of the maximum recovery on (a) the number of uninsured motorists involved, (b) the number of policies or (c) the number of injured plaintiffs.

> "The law provides:

> "(a) Nor shall any such policy or contract be so issued or delivered unless it contains an endorsement or provision undertaking to *pay the insured* all sums which he shall be legally entitled to recover as damages *from the owner or operator of an uninsured motor vehicle.*

> "The act clearly states that such policy shall contain these provisions

and goes further in clearly and decisively defining an insured. If a plaintiff obtains a judgment and then brings an action on the policy the court would determine whether the plaintiff is an insured, whether the plaintiff is legally entitled to recover from the owner or operator of the uninsured motor vehicle and whether the maximum amount prescribed in the act has not been paid. If the court found in the affirmative on these three points it would seem that judgment must be for the plaintiff. No question would arise as to how much had been paid under other policies. The recovery would be limited by the amount of recovery to *this* plaintiff." (Emphasis added.)

When viewed in light of the probable conflict with Section 38.1–381(h) of the Virginia Code and the definite conflict with the legislative purpose of Virginia's Uninsured Motorist Law were this clause construed to mean insurance available at the time of the accident, the fact that in analogous circumstances involving two liability policies courts have held that the crucial time for measuring availability of insurance funds is at the time of the accident does not seem persuasive in this situation. The literal meaning of the word available is useable, at one's disposal, obtainable. And it is the view of this Court that for the purposes of construing this clause the word "available" means literally available to the Wellses. Such a view is in keeping with the accepted meaning of the word and serves the purposes of Virginia's Uninsured Motorist Law.

In light of all the foregoing, and keeping in mind the doubtful validity of the "Other Insurance" clause under Virginia's statutory provision were the phrase interpreted as plaintiff contends, this Court is obliged to hold in the interest of justice and in keeping with the intent of Virginia's Uninsured Motorist Law as we interpret it that there are no funds available to the defendants in this action under clause one of the "Other Insurance" provisions of Travelers' policy and that Travelers has valid and collectible coverage available to the defendants if legal liability on the part of John George Stahl, the uninsured motorist, is established in the pending actions in the Circuit Court of Halifax County, Virginia.